[No. 29770. *En Banc.* February 27, 1948.]

ROLAND H. CORBETT, *Appellant,* v. L. G. WINGARD *et al., Respondents,* PHILIP W. SCHOEL *et al., Appellants.*[1]

[1] Reported in 189 P. (2d) 972.

*Lloyd Holtz* and *George F. Hannan,* for appellants Corbett *et al.*

*Wright, Booth & Beresford,* for appellants Schoel *et al.*

*Rummens & Griffin,* for respondents L. G. Wingard *et al.*

*Rummel & Skogg,* for respondents Lester L. Wingard *et al.*

ROBINSON, J.—This case has to do with salmon fishing in Alaskan waters. The action was instituted by plaintiff for an accounting of the partnership which he claimed to have in the firm of L. G. Wingard Packing Company. The answer of the defendants L. G. Wingard and Mary Lou Wingard challenged the allegations of the complaint and then, by way of an affirmative defense, set out the history of the activities of the L. G. Wingard Packing Company, which, if true, constituted a complete defense. Schoel and MacLean filed answers and cross-complaints in which they claimed an interest in the partnership. Other defendants made similar allegations as made by L. G. Wingard and Mary Lou Wingard.

During the course of the trial, there was presented in some manner to the court, but not filed, an intervening petition and complaint by Edla Wingard, the former wife of defendant L. G. Wingard. After trial, the court entered a decree dismissing the complaint and cross-complaints of the defendants Schoel and MacLean. The decree further provided:

"IT IS ORDERED, ADJUDGED AND DECREED that as of May 6th, November 13th, December 31st, 1942, and at all times intervening the sharing interest in the profits under the Wingard-Red Salmon lease of May 6th, 1942, and which said lease terminated December 31st, 1942, was and is only as follows:

| | |
|---|---|
| "ALLAN MACLEAN | one-eighth (⅛) |
| "MARY LOU GANDOLFO | one-eighth (⅛) |
| "LESTER L. WINGARD | one-sixteenth (1/16th) |
| "LORRAINE PIKE | one-thirty-second (1/32nd) |
| "CONNEY NELSON | one-thirty-second (1/32nd) |
| "ROLAND CORBETT | one-fourth (¼th) |
| "L. G. WINGARD | one-fourth (¼th) |
| "PHILLIP W. SCHOEL | one-eighth (⅛); |

and

"It Is Ordered, Adjudged and Decreed that each said party above named, sharing in the profits from said venture, paid in his and her own money for his and her respective shares, and that the defendant, L. G. Wingard, retained and owned a one-fourth share and no more; and

"It Is Ordered, Adjudged and Decreed that said venture ceased December 31st, 1942, and the relationship between the parties above named was fully terminated, except for the accounting after distribution of the proceeds of $100,000.00 on December 31st, 1942, for any additional sums and assets remaining as offset by liabilities, if any, as and when funds became available, considering taxes, and that the defendant L. G. Wingard did fully and completely, and has fully and completely accounted, and the surplus funds remaining subject to distribution pro-rata to the shares above described have been placed and remain in a special fund in the National Bank of Commerce, Seattle, Washington."

There were other portions of the decree which contained certain clauses not necessary to mention.

Plaintiff appealed, as did Edla Wingard, Philip W. and Mildred Schoel, and Allan and Nellie MacLean. The various assignments of error called in question the correctness of the decree.

▆ Appellants MacLean failed to file a bond on appeal. Their appeal is accordingly dismissed.

Subsequent to the entry of the decree, Roland H. Corbett died, and this court entered an order substituting Lloyd Holtz, administrator of his estate, as appellant.

Hereafter we will refer to the parties as follows: Appellant Roland H. Corbett, as Corbett; Philip W. Schoel, as Schoel; L. G. Wingard, as Wingard; Mary Lou Wingard (formerly Mary Lou Gandolfo), as Mary Lou.

The statement of facts contains two thousand pages, the transcript has two hundred ten pages, and there are two hundred twenty exhibits. No good purpose would be served by making an extended recital of all of the evidence produced at the trial. We deem it sufficient to make the following brief summary to the end that our reason for decision may be made plain:

Roland H. Corbett had been engaged in the salmon industry for a period in excess of twenty-eight years, and was recognized as a skilled cannery foreman and operator. Respondent Wingard entered the "Wild Life" service of the United States government in 1928 as a warden. His work in Alaska acquainted him with the fishing grounds and the Alaska canneries. He left the service in 1939, with no substantial means but with a determination to fish in Alaskan waters and to there acquire a cannery. He had in mind fishing in Bristol Bay and to purchase a cannery near that body of water.

Due to war conditions, it was next to impossible to acquire ships. However, just prior to May, 1941, Wingard and another individual acquired an old boat, the Tondelayo, which they thought could be refitted as a floating cannery. Shortly after buying the ship, the United States marshal seized it under a libel for moneys past due from others. Wingard was able to borrow fifteen hundred dollars from respondent Mary Lou, and twenty-five thousand dollars from parties not here involved. Due to certain demands on the part of the insurance agents, the Tondelayo was insured for a large sum. Their salmon pack was small. On a trip to Seattle, the Tondelayo sank, with a total loss of ship and cargo. From the insurance, Mary Lou received forty-five hundred dollars, and Wingard, eight thousand dollars.

Corbett and Schoel came into the picture prior to the 1942 fishing season. Wingard invited Corbett into the venture, and Schoel was mentioned to Wingard by Mary Lou. The agreement was that Corbett and Schoel would each have a one-eighth interest in the venture on the payment by each of the sum of three thousand dollars.

Wingard, Corbett, and Schoel traveled to San Francisco during the latter part of March. On May 6th, a formal lease for a cannery was made with a San Francisco firm. Among other things, that lease provided:

"The Red Salmon Canning Co. agrees to lease the Ugashik Cannery as is, where is, to L. G. Wingard for the 1942 canning season from about June 15 to September 15, 1942."

Neither Corbett nor Schoel paid money into the venture. May 10, 1942, Wingard and Corbett entered into a written agreement which provided:

"THIS AGREEMENT made and entered into this 10th day of May, 1942, by and between L. G. Wingard, doing business under the firm name and style of L. G. Wingard Packing Co., hereinafter referred to as 'Employer', and R. H. Corbett, hereinafter referred to as 'Employee', both of Seattle, Washington, in consideration of the mutual promises herein contained,
"WITNESSETH:
"WHEREAS, Employer is operating a salmon cannery on the Ugashik river, territory of Alaska, and
"WHEREAS, Employee is by occupation a machinist and experienced cannery foreman,
"Now, THEREFORE, it is hereby agreed as follows:
"(1) Employer agrees to employ Employee as cannery foreman at his cannery operation on the Ugashik river aforementioned for the Alaska salmon fishing season for 1942, said season to last not more than five (5) months nor less than three and one-half (3½) months commencing May 10, 1942.
"(2) Employer agrees to pay Employee $4,000.00 for his services during the aforementioned season, and in the event that Employee's services are required for more than five (5) months agrees to pay the regular Bristol Bay cannery foreman rate for the additional time."

Wingard secured limited funds to care for the 1942 fishing season. May 25, 1942, he and Allan MacLean entered into an agreement concerning the payment of three thousand dollars to Wingard for a one-eighth interest of the net profits of the 1942 salmon fishing venture. The contract was signed "L. G. Wingard Packing Co. by L. G. Wingard," and in the body of the instrument Wingard was mentioned as one of the parties to the contract as "L. G. Wingard doing business under the firm name and style of L. G. Wingard Packing Co." Schoel, as attorney for Wingard, assisted in preparing the contract. May 8, 1942, Wingard and Corbett entered into a written agreement which, among other things, provided:

"(1) R. H. Corbett agrees to make and deliver to L. G. Wingard R. H. Corbett's promissory note for three thousand dollars ($3000.00) payable thirty days from date with in-

terest at 6% per annum receipt of which is hereby acknowledged.

"(2) L. G. Wingard agrees to pay R. H. Corbett one fourth (¼) of the net profits from the operation of the aforementioned cannery, said payment to be made immediately after the sale of the pack.

"(3) L. G. Wingard agrees to pay himself and other employees, including R. H. Corbett, reasonable salaries only and agrees not to pay himself a salary in excess of six thousand dollars ($6000.00) for the canning season."

As a result of the fishing operations in 1942, the parties caught fish of the value of seven hundred thousand dollars. The net profit was about one hundred thousand dollars. Out of the venture, Corbett received sixteen thousand dollars, aside from certain withdrawals he had made, his total for the season being $31,450; Schoel received $17,500. A complete statement of the financial situation was rendered each of the parties in March, 1943. The fishing was continued during the years 1943 and 1944.

Appellant Corbett contends that the court erred in not holding that he was a limited partner in the 1943 and 1944 operations to the extent of a one-fourth interest; in denying an accounting; in holding that there was no good will value in the partnership; in refusing the introduction of certain books; and in denying a motion for a new trial. Corbett based his claim of partnership upon the facts we have already set out, and upon further evidence contained in the record furnished, for the most part, by himself and appellant Schoel.

Schoel sought to show by his testimony that, at the inception, the interests of the partnership were divided as follows: Wingard, one half; Corbett, one fourth; MacLean, one eighth, and himself, one eighth; and that the other parties made no contributions to the partnership. Further, that the moneys invested in 1942 were invested for the benefit of all the parties, and that the fishing operations of 1943 and 1944 were financed, or at least supported, by the properties acquired by Wingard, Corbett, MacLean, and himself; that he had a one-eighth interest in those ventures for which he had paid the sum of three thousand dollars.

It will be noted that a decision in this case depends entirely upon the veracity of the witnesses. Concerning the evidence given by Corbett, the trial court had this to say:

"He was one of the least convincing witnesses I have ever seen, either here or in police court. I don't think the man was lying; I don't [sic] think that his mind works so slowly that he was completely and utterly confused. He may be a genius as a mechanic, but I just couldn't stay with him at all."

Then, after reciting some of the evidence given by Corbett, the court concluded:

"That is where he was so utterly confused and contradictory and mixed up that I decided none of his testimony was worth anything and that he didn't have any actual memory at all of what happened; that he was just constructing as he went along to meet what he thought had to be the story."

The trial judge said of the evidence given by Schoel:

"In the first place, it was very, very difficult to believe that Schoel was deliberately falsifying. . . . That is a very hard thing to believe, and he had his check book with him. So I kept casting about, trying to figure out some theory upon which I could reconcile what he was saying with the highly improbable theory that he actually had paid his note in November but didn't then get it, and of the tenor of the letters that he wrote thereafter. I was trying to find something which would stand up, and that one occurred to me,—that perhaps in fact they had paid this $3,000 in November, and then thereafter Wingard suddenly discovered, from reading his contract with Schoel and his contract with Corbett, that they weren't entitled to get their capital back. MacLean was, but they weren't, and that he thereupon demanded they pay that to him and they did. I can very well believe that and avoid coming to the conclusion that Schoel is not telling the truth.

"But then, when these letters came in, and he testified positively he had never heard of these silent partners until late in the summer and these rough drafts of the partnership agreements in his own handwriting were put up to him, as having been drawn before he went to Alaska, then I remembered the usual instruction to the jury, 'If you believe that a witness has testified falsely to any material fact, then you are at liberty to disregard that witness' testimony entirely.' That is just what I did,—reluctantly, but I came to the con-

clusion that I couldn't believe a word the man told me, which was a very hard conclusion to come to, concerning a member of the bar."

A reading of the evidence compels us to the same conclusion arrived at by the trial court. The record discloses that the ideas contained in the 1942 contract contemplated a working agreement only for that year. Each of the written agreements clearly indicates that the parties did not at that time have in mind the continued operation of the fishing business subsequent to the close of the 1942 season. The evidence given concerning the parties to this litigation is not sufficient to prove partnership activities for the years 1943 and 1944.

During the course of the trial, counsel for Corbett made a demand for all the records, ledger sheets, and books of account of the 1943 and 1944 activities of the Wingard Packing Company. The attorney for Wingard offered to produce the record sheets. The court said:

"It would seem to me that at the present time we should be directing the inquiry along two main lines, and that any documents that should be produced at this time should bear on those general lines of questioning."

The record does not disclose whether counsel for Corbett availed himself of the offered records. At one time Corbett's attorney made the following offer of proof:

"I think I should make an offer of proof, your Honor; That the testimony would show that approximately $3500 of the amount credited to Mr. Corbett's account in '43 and '44, has gone into the purchase of the cannery; and then certain money outside of that was paid by the company to the Department of Internal Revenue, on account of Mr. Corbett's tax."

We cannot from the record ascertain that any proper demand for the books was made. Surely, the offer of proof was insufficient. In any event, we are inclined to agree with the trial judge that Corbett should have made a *prima facie* case of partnership before being allowed to inspect the books of the Wingard Packing Company. To hold otherwise would

do violence to the rules concerning private property and the right of privacy guaranteed to all individuals.

■ Objection was also made to the introduction of evidence by a witness named Kenneth Caplinger. The evidence of the witness sought to show that Mary Lou was interested in the 1941 venture, "Tondelayo," and that she received funds therefrom which were subsequently invested in the 1942 operation. We are of the opinion that the evidence was admissible. Its real purpose was to show the court the history of the fishing business and the interests of the various parties. Mary Lou claimed an interest in the venture and had every right to prove that interest, as did all of the other parties to the action.

■ At one time, Edla Wingard moved, through her attorney, to be allowed to withdraw as an intervening plaintiff. The court refused to grant the motion. She did not take part in the litigation by testifying or taking any action during the progress of the litigation. It is our conclusion that the trial court was in error in not allowing her to withdraw as a litigant.

With the exception to which we have just referred, the judgment of the trial court will be affirmed.

MALLERY, C. J., MILLARD, STEINERT, SIMPSON, JEFFERS, SCHWELLENBACH, and HILL, JJ., concur.

---

April 14, 1948. Petition for rehearing denied.